398 So.2d 1053 (1981)
STATE of Louisiana
v.
Stanley DARANDA.
No. 80-KA-2413.
Supreme Court of Louisiana.
May 18, 1981.
*1054 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Eddie Knoll, Dist. Atty., for plaintiff-appellee.
Dee D. Drell, Gravel, Burnes & Robertson, Alexandria, for defendant-appellant.
MARCUS, Justice.
Stanley J. Daranda was charged by bill of information with negligent homicide in violation of La.R.S. 14:32. After trial by jury, defendant was found guilty and sentenced to serve five years at hard labor. On defendant's first appeal, his conviction was affirmed, but, finding that the trial judge failed to comply with La.Code Crim. P. art. 894.1(C) which requires him to state for the record the considerations taken into account and the factual basis therefor in imposing sentence, we vacated the sentence and remanded the case to the trial court for resentencing.[1] On remand, the trial judge again sentenced defendant to serve five years at *1055 hard labor, the maximum term of imprisonment under the statute. On this appeal, defendant relies on four assignments of error to have his sentence set aside.
All of the assigned errors relate to either the trial judge's failure to follow the sentencing guidelines set forth in La.Code Crim.P. art. 894.1 or his imposition of an excessive sentence.
The record reflects the following facts. On the night of January 19, 1979, defendant was driving his automobile north on La. Highway 1 in Avoyelles Parish. At the same time, Ms. Hazel Bordelon was traveling south on the same highway in her automobile accompanied by two passengers, Mrs. Nester Deshotel, who occupied the front passenger seat, and Mr. John Juneau, who was seated in the rear of the vehicle. The roadway was straight, level and wide, with no obscurements. It was raining at the time. As the vehicles were about to pass, going in the opposite direction, defendant's vehicle suddenly went into a spin, crossed into the southbound lane of traffic and collided headon with the Bordelon vehicle. After impact, defendant's vehicle went into a ditch on the side of the highway and the other vehicle made a forced spin in its lane. Both vehicles were totally demolished. All occupants of the two vehicles, including defendant, were hospitalized with serious injuries. Mrs. Deshotel died on February 6, 1979, from a streptococcus infection in fluid which accumulated on her brain as a result of injuries sustained in the accident.
Trooper Clifford Devereaux testified that upon arriving at the scene of the accident, he proceeded to determine the extent of the injuries. He located defendant in the back seat of his vehicle and questioned him as to his injuries. The officer stated that defendant's speech was slurred and that he had "a strong smell of alcohol on his breath" and the vehicle also had an odor of alcohol. Trooper Travis R. Wiley, who investigated the accident, stated that the physical evidence indicated defendant had been heading in a northbound direction on La.Highway 1 when he lost control of his vehicle and traveled into the southbound lane striking the vehicle in that lane headon. The impact occurred wholly within the southbound lane. There was no evidence that the Bordelon vehicle was out of control, nor was any type of driver violation by Ms. Bordelon found. Trooper Wiley further testified that upon approaching defendant in his hospital room approximately two hours after the accident, he could detect a heavy alcohol odor. Defendant was behaving in a loud and belligerent manner and was using obscene language. His speech was slurred. Blood was taken from defendant to determine its alcohol content. When the trooper asked defendant if he had had anything to drink prior to the accident, defendant replied that he did not care what happened to him; that he was not going to lie; and that he had had "three quarts of beer and four or five small beers" before the accident. The state also introduced the blood analysis result of the test conducted by the State Police Crime Laboratory which showed that defendant's blood contained .19 per cent alcohol by weight, a percentage sufficient to give rise to the presumption pursuant to La.R.S. 32:662(A)(1)(c) that defendant was under the influence of alcohol.[2] Dr. S. R. Abramson, the physician who drew the blood from defendant, also testified that defendant told him that he had been drinking. He further stated that defendant's speech was sluggish and that he did not seem completely coherent and, in his opinion, defendant was intoxicated.
*1056 Ms. Bordelon testified that she was driving with her headlights illuminated but did not have them set on "bright" as defendant's vehicle approached her, crossed into her lane and collided with her vehicle. She stated that she heard a loud noise as defendant's car approached as if it were traveling at a high speed. On the other hand, defendant testified that he was blinded by the bright headlights of Ms. Bordelon's oncoming vehicle and that he applied his brakes and signaled several times for her to dim her lights but she failed to do so. Defendant stated that as he was applying his brakes, his car turned and he hit the other vehicle. Defendant estimated his speed at 30 miles per hour. He contended that he had had only two beers prior to the accident.
On resentencing, the trial judge sentenced defendant to serve five years at hard labor, the maximum term of imprisonment under the statute. He made specific reference to La.Code Crim.P. art. 894.1 and the considerations listed thereunder. He stated for the record that he felt there was an undue risk that during a period of suspended sentence or probation defendant would commit another crime of this nature; that defendant was in need of custodial environment which could be provided most effectively by his commitment to an institution; and that a lesser sentence would deprecate the seriousness of defendant's crime. The trial judge also considered the presentence investigation report in imposing sentence on defendant. That report indicated that while defendant had no record of prior convictions, Mansura City Marshall Earl Gaspard stated that he had arrested defendant before for DWI and "on one occasion he [defendant] almost ran over the same lady that died from the accident" while he was "drinking and driving at a high rate of speed in town limits of Mansura." Father Thompson, the Catholic priest in Mansura, stated that he had known defendant for a long time and, while he always helped in church matters when requested, he knew defendant "did drink quite a bit." It was the recommendation of the probation and parole agent who compiled the presentence report that defendant be sentenced to the "fullest extent as the law allows." The trial judge also considered the provisions of La.Code Crim.P. art. 894.1(B) and found no grounds which would cause him to suspend sentence or place defendant on probation.
La.Const. art. 1, § 20 prohibits the imposition by law of excessive punishment. Accordingly, we have held that imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional rights against excessive punishment that is enforceable by this court on appellate review. The trial judge's reasons in imposing sentence, as required by La.Code Crim.P. art. 894.1, are an important aid to this court when called upon to exercise its constitutional function to review a sentence complained of as excessive. State v. Spencer, 374 So.2d 1195 (La.1979); State v. Gist, 369 So.2d 1339 (La.1979); State v. Sepulvado, 367 So.2d 762 (La.1979). Moreover, the trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Spencer, supra; State v. Sepulvado, supra.
In the instant case, we conclude that the trial judge adequately stated for the record the considerations taken into account and the factual basis therefor in imposing sentence as required by La.Code Crim.P. art. 894.1. Additionally, after reviewing the record, including the evidence adduced at trial and the sentencing hearing as well as the trial judge's reasons for imposing sentence, we are unable to say that the sentence is excessive, particularly in view of the evidence of defendant's extreme intoxication at the time of the accident. Clearly, the trial judge did not abuse his wide discretion. Hence, the assigned errors are without merit.

DECREE
For the reasons assigned, defendant's sentence is affirmed.
*1057 DENNIS, J., dissents with reasons.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
Although I agree that the record supports the sentence, giving due consideration to the wide discretion of the trial court in deciding a sentence, I am compelled to note that it is seldom appropriate for a probation officer to include in a presentence investigation report, or for a trial judge to consider, recommendations as to the length of sentence by law enforcement officers and prosecutors, unless these officials state the factual basis and reasons for recommendations. If the sentence in the case had been based solely or principally on the unsupported recommendations, I would vote to set aside the sentence and remand for resentencing.
DENNIS, Justice, dissenting.
I respectfully dissent.
In my opinion, the record in this case does not support the trial judge's decision to refuse probation or a lesser sentence in view of the defendant's lack of a previous criminal conviction, his steady employment, his lack of intention to do harm, and the absence of any indication that the circumstances are likely to recur or that the defendant would not respond well to probationary treatment.
NOTES
[1] State v. Daranda, 388 So.2d 759 (La.1980).
[2] La.R.S. 32:662(A)(1)(c) provides that, upon the trial of any criminal action arising out of acts alleged to have been committed by a person while driving under the influence of alcoholic beverages, the amount of alcohol in the person's blood at the time alleged as shown by chemical analysis of the person's blood shall give rise to the following presumption:

If there was at that time 0.10 per cent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of alcoholic beverages.